IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| DANIEL MEYERS, | }<br>}<br>} |
| Plaintiff, | }<br>} |
| v. | } DOCKET NO.:<br>} |
| BLUECROSS BLUESHIELD<br>OF TENNESSEE, INC., | }<br>} JURY DEMAND REQUESTED<br>} |
| Defendant. | } |

## COMPLAINT AND DECLARATORY JUDGMENT

COMES NOW the Plaintiff, Daniel Meyers (hereinafter, "Mr. Meyers" or "Plaintiff") by and through undersigned counsel, LAW OFFICE OF JAMES W. FRIAUF, PLLC, and for his Complaint against Defendant, Blue Cross Blue Shield of Tennessee, Inc. (hereinafter, "BCBST" or "Defendant"), avers as follows:

### PARTIES

1. Plaintiff is a resident citizen of the State of North Carolina.

2. Defendant is a domestic, non-profit health plan company engaged in the insurance industry. At all relevant times, BCBST transacts or transacted business in the State of Tennessee and was registered to conduct business with the Tennessee Department of Commerce and Insurance (hereinafter, "Department"). BCBST maintains its principal place of business in Chattanooga, Tennessee. BCBST may be served with process via the Department at 550 James Robertson Pkwy., 7th Floor,

1

Nashville, TN 37243.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as the amount in controversy exceeds $75,000.00, exclusive of costs and interest, and the action is between citizens of different States.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in Hamilton County, Tennessee.

## FACTUAL AND LEGAL ALLEGATIONS

5. At all relevant times, Mr. Meyers maintained health insurance coverage with BCBST (hereinafter, the "Plan") through his employment with the Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Health System (hereinafter, "Erlanger"). **See Exhibit "1" attached hereto**.

6. On or about October 3, 2013, Mr. Meyers injured his right hip and his left hip and/or his left hip injury was caused by or exacerbated by the injury to his right hip sustained on that date.

7. Mr. Meyers sought treatment from T. Marc Barnett, M.D. (hereinafter, "Dr. Barnett"), an orthopedist practicing with Asheville Orthopaedic Associates, P.A.

8. Upon information and belief, Dr. Barnett was within the Plan's network of providers.

9. On or about October 24, 2013, Mr. Meyers underwent bilateral total hip arthroscopies performed by Dr. Barnett at Mission Hospital (hereinafter,

2

"Mission").

10. Mr. Meyers was an inpatient at Mission for a total of three (3) days, dating from his admission on or about October 24, 2013 to his discharge, on or about October 26, 2013.

11. As a result of Mr. Meyers' admission to Mission, he incurred medical costs in the amount of SIXTY-FOUR THOUSAND EIGHTY-THREE DOLLARS AND 62/100 ($64,083.62). **See Exhibit "2" attached hereto.**

12. BCBST was obligated, pursuant to the Plan, to pay for the medical costs incurred by its insured, Mr. Meyers as a result of his inpatient stay at Mission.

13. BCBST refused to pay for medical costs incurred by Mr. Meyers as a result of his inpatient stay at Mission.

14. BCBST's stated reason for denying payment of benefits on behalf of its insured, Mr. Meyers, was that, "Benefits are excluded for on-the-job injury or for services eligible for Worker's Compensation Benefits."

15. At all relevant times, BCBST knew or should have known that Erlanger maintains an internal "Job Injury Benefits" program in which Erlanger makes a unilateral decision as to whether an employee's injury or medical condition is considered an "on-the-job injury."

16. Erlanger determined that Mr. Meyers' hip injury/injuries and/or medical condition(s) were not work-related pursuant to the Job Injury Program. Accordingly, no Job Injury benefits were afforded Mr. Meyers.

17. At all relevant times, BCBST knew or should have known that Erlanger, as a

political subdivision of the State of Tennessee, is statutorily exempt from the Workers Compensation Law, Tenn. Code Ann. § 50-6-101, *et seq*.

18. At all relevant times, Erlanger had not "opted-in" to the Workers Compensation Law. Accordingly, Mr. Meyers has no statutory right to workers' compensation benefits. Furthermore, he has limited or no judicial or administrative mechanism with which to compel Erlanger to afford Mr. Meyers workers' compensation benefits. At all relevant times, the foregoing, upon information and belief, was known to BCBST.

19. Mr. Meyers is currently in litigation against Erlanger for, *inter alia*, refusal to pay benefits to Mr. Meyers pursuant to the Job Injury Program. Upon information and belief, to the extent Mr. Meyers has any judicial recourse to enforce his rights pursuant to the Job Injury Program, it is via a breach of contract action. Although litigation against Erlanger commenced on or about February 6, 2014, Erlanger has steadfastly maintained that it is not obligated to pay Job Injury Benefits on behalf of Mr. Meyers.

20. On or about May 7, 2014, BCBST's subrogation department contacted Mr. Meyers and requested his cooperation in protecting any subrogation interest it may have in recovery for Mr. Meyers' injury and/or medical condition necessitating the October 24, 2013 surgery and subsequent inpatient stay at Mission. **See Exhibit "3" attached hereto**. Mr. Meyers complied fully with this request.

21. On or about June 2, 2014, Mission sent a "FINAL NOTICE" to Mr. Meyers with respect to outstanding medical costs incurred during the October 24-26 inpatient

hospitalization at Mission. **See Exhibit "4" attached hereto**.

22. Undersigned counsel received a notice from BCBST's subrogation department on or about July 23, 2014 with respect to Mr. Meyers' ongoing litigation against Erlanger. Mr. Meyers responded via undersigned counsel that BCBST's subrogation interest, to the extent any existed, would be protected. **See Exhibit "5" attached hereto**. Moreover, counsel advised BCBST that it was responsible for payment of the Mission invoice and made demand for payment thereof. **Id.** To date, BCBST has failed to pay benefits on behalf of Mr. Meyers and has failed to intervene in Mr. Meyers' litigation against Erlanger or undertake any other efforts to advance or protect any subrogation interest it may have in that matter.

23. Mission has turned Mr. Meyers' account over to collections. **See Exhibit "6" attached hereto**.

## COUNT I – BREACH OF CONTRACT

24. The plan provides in pertinent part,

> **PRIOR AUTHORIZATION, CARE MANAGEMENT, MEDICAL POLICY AND PATIENT SAFETY**
>
> . . .
>
> A. **Prior Authorization**
>
> BCBST must authorize some Covered Services in advance in order for those Covered Services to be paid at the Maximum Allowable Charge without Penalty. Obtaining Prior Authorization is not a guarantee of Coverage. All provisions of the EOC must be satisfied before Coverage for services will be provided.
>
> **Services that require Prior Authorization include, but are not limited to:**

- Inpatient Hospital stays (except maternity admissions)

25. Upon information and belief, Mr. Meyers sought and/or Mission sought on Mr. Meyers' behalf, Prior Authorization for his October 24-26 inpatient stay at Mission and was approved by BCBST for the same.

26. "Attachment A: Covered Services and Limitations on Covered Services" of the Plan provides in pertinent part at:

**II. ELIGIBILE SERVICES,**

   D. <u>**Inpatient Hospital Services**</u>

   Medically Necessary and Appropriate services and supplies in a hospital that: (1) is a licensed Acute care institution; (2) provides Inpatient services; (3) has surgical and medical facilities primarily for the diagnosis and treatment of disease and injury; and (4) has a staff of physicians licensed to practice medicine and provides 24 hour nursing care by graduate registered nurses. . . .

   1. Covered

      a. Room and board in a semi-private room (or private room if room and board charges are the same as for a semi-private room); general nursing care; medications, injections, diagnostic services and special care units.

      b. Prescription Drugs that are prescribed, dispensed or intended for use while the Covered Person is confined in a hospital . . ..

      c. Attending Practitioner's services for professional care.

      . . .

I.  **Reconstructive Surgery**

  Medically Necessary and Appropriate surgical procedures intended to restore normal form or function.

  1. Covered

    a. Surgery to correct significant defects from . . .accidents . . . .

S.  **Supplies**

  Medically Necessary and Appropriate expendable and disposable supplies for the treatment of disease or injury.

  1. Covered

    a. Supplies for the treatment of disease or injury used in a[n] . . . inpatient facility.

    b. Supplies for treatment of disease or injury that are prescribed by a Practitioner and cannot be obtained without a Practitioner's prescription.

27. Per the terms of the Plan, Defendant was obligated to pay for medical costs associated with Mr. Meyers' inpatient hospitalization at Mission.

28. Defendant's refusal, despite notice and demand for payment, amounts to a breach of contract.

29. As a direct and proximate result of Defendant's breach of contract, Mr. Meyers has suffered injuries and damages as set forth more fully herein.

## COUNT II – BAD FAITH

30. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 29, inclusive.

31. At all relevant times, the Plan, by its terms, was due and payable.

7

32. A formal demand for payment was made on or about July 23, 2014.

33. It has been more than 60 days since formal demand for payment was made.

34. Defendant's failure to pay is not in good faith.

35. The foregoing actions by Defendant violate Tenn. Code Ann. § 56-7-105(a) (hereinafter, "Bad Faith").

36. As a direct and proximate result of Defendant's Bad Faith, Plaintiff has suffered additional expense, loss, and injury as set forth more fully herein.

## COUNT III – DECLARATORY RELIEF

37. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 36, inclusive.

38. As set forth more fully herein, Defendant is contractually obligated to, but failed to pay benefits on behalf of its insured, to Mission for medical costs incurred by Mr. Meyers.

39. Pursuant to Tennessee Rule of Civil Procedure 57 and Tenn. Code Ann. § 29-14-101, *et seq.*, Plaintiff moves the Court for an Order declaring Defendant is in breach of the Plan and ordering it to make payment to Mission for medical costs incurred.

## DAMAGES

40. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 39, inclusive.

41. As a direct and proximate result of each and every one of the foregoing acts, conduct, and violations of the law alleged herein, Plaintiff have suffered compensatory damages in an amount not less than EIGHTY THOUSAND

DOLLARS AND 00/100 ($80,000.00). Such damages include, without limitation, SIXTY-FOUR THOUSAND EIGHTY-THREE DOLLARS AND 62/100 ($64,083.62) Defendant failed to pay Mission pursuant to the Plan, as well as damages to Plaintiff's credit rating as Mission turned Plaintiff over to collections and has made derogatory marks on Plaintiff's credit reports maintained by Credit Bureaus.

42. Because Defendant's actions as alleged herein were in violation of Tennessee's Bad Faith statute, Plaintiff requests the Court impose a twenty-five percent (25%) penalty in a sum of not less than TWENTY THOUSAND DOLLARS AND 00/100 ($20,000.00).

43. Plaintiff is further entitled to his costs incurred in bringing this action, as well as his reasonable attorney's fees pursuant to Tenn. Code Ann. § 56-7-105(a).

**WHEREFORE**, Plaintiff prays for judgment against Defendant and declaratory relief as follows:

1. Compensatory Damages in an amount of not less than EIGHTY THOUSAND DOLLARS AND 00/100 ($80,000.00);
2. Bad Faith penalties in the sum of not less than TWENTY THOUSAND DOLLARS AND 00/100 ($20,000.00);
3. Reasonable attorney's fees incurred;
4. Pre- and Post-judgment interest;
5. Costs of suit herein; and

6. Any and all such further relief as the Court deems just and proper.

Respectfully submitted this 6th day of March, 2015.

*Law Office of*
**JAMES W. FRIAUF, PLLC**

/s/ James Friauf
JAMES W. FRIAUF (#027238)
P.O. Box 24349
Knoxville, TN 37933
Tele: (865) 236-0347
Fax: (865) 253-7261
Email: james@friauflaw.com
Our File No.: 15-032

*Attorney for Plaintiff, Daniel Meyers*

10